UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
NORMA KNOPF and MICAHEL KNOPF,         :        16cv6601(DLC)
                                       :
                Plaintiffs,            :        OPINION AND ORDER
                                       :
        -v-                            :
                                       :
MICHAEL PHILLIPS, PURSUIT HOLDINGS,    :
LLC., and MICHAEL H. SANFORD,          :
                                       :
                Defendants.            :
                                       :
-------------------------------------- X

APPEARANCES

For the plaintiffs:
Eric William Berry
Eric W. Berry, PC
5 Columbus Circle, 8th Floor
New York, NY 10022

For the defendant Michael Phillips:
Adam Hanan
Nadel & Ciarlo P.C.
3 East 54th Street, 16th Floor
New York, NY 10022

Pro se defendant:
Michael H. Sanford
23 McKinley Road
Montauk, NY 11954

DENISE COTE, District Judge:

        This case is the latest installment of an ongoing loan

repayment dispute between the plaintiffs –– Norma Knopf and

Michael Knopf ("the Knopfs") –– and defendant Michael Sanford

("Sanford") and his holding company, Pursuit Holdings, LLC

("Pursuit").  This action concerns claims against Michael

Phillips ("Phillips"), who purchased a penthouse apartment
located at 44 E. 67th Street ("PHC") from Pursuit.  The Knopfs
allege that Phillips tortiously interfered with contracts
between them and Pursuit and that the sale of PHC constitutes a
fraudulent conveyance.  The Knopfs also bring claims against
Sanford for breach of fiduciary duty, veil piercing/alter ego,
and for a constructive trust.  Sanford and Phillips have moved
to dismiss the second amended complaint ("SAC").  For the
reasons that follow, the tortious interference with contract
claim against Phillips is dismissed.  All other claims shall
proceed.

### Background

    The following facts are taken from the SAC, documents
integral to the SAC, and documents of which the Court may take
judicial notice.

## I.  Dealings Between the Knopfs and Sanford

    In the late 1990's, the Knopfs met Sanford, a stockbroker
who was planning to establish a hedge fund.  The Knopfs invested
approximately $11.6 million in Sanford's hedge fund, which is
now known as Sanford Partners, L.P. (the "Hedge Fund").  The
Knopfs subsequently made five loans to Sanford's other

2

businesses using the funds they had invested in the Hedge Fund and from Norma Knopf's personal funds.  This dispute arises from two of those loans, which were each made in 2006 to Pursuit for the purpose of purchasing residential real estate located in Manhattan, New York.  The first loan was for $1,690,860 and was used to purchase PHC.  The second loan was for $3,250,000 and was used to purchase three condominiums located at 10 Bedford Street (the "Townhouse," with PHC, the "Properties").  Both loans were made pursuant to written contracts (the "Loan Agreements") executed by the Knopfs and Pursuit, which provided that in consideration of the loans, Pursuit and Sanford promised to execute mortgage liens on the Properties in favor of the Knopfs, and that, until the mortgage documents were executed, Pursuit would not "sell, hypothecate, or otherwise encumber" the Properties without the permission of the Knopfs.  Pursuit and Sanford did not repay any portion of either loan and did not execute a mortgage on either property in favor of the Knopfs.

## II.   **The State Court Action**

In 2009, the Knopfs commenced an action against Pursuit and Sanford in the Supreme Court of the State of New York, New York County, captioned <u>Knopf, et al. v. Sanford, et al.</u>, No. 113227/2009 (the "State Court Action").  In that action, the

Knopfs brought claims for breach of contract and sought the imposition of a constructive trust on the Properties. In connection with the State Court Action, the Knopfs filed notices of pendency against the Properties on September 18, 2009 (the "Initial Notices"). The Appellate Division, First Department, on October 15, 2013, extended the Initial Notices for a period of three years, to end on September 17, 2015. Knopf v. Sanford, 972 N.Y.S.2d 893, 894 (1st Dep't 2013).

In a decision dated December 11, 2014, the Appellate Division granted summary judgment in favor of the Knopfs on their breach of contract claims. Knopf v. Sanford, 1 N.Y.S.3d 18 (1st Dep't 2014). The Appellate Division also held that the Knopfs had failed to establish their entitlement to summary judgment on their constructive trust claim because they had not made an evidentiary showing that money damages would be inadequate. Id.

Sometime in 2013 or 2014, Phillips, who is a real estate developer, became interested in purchasing PHC, which Pursuit and/or Sanford had publicly listed for the discounted price of $2.7 million. At that time, Phillips owned another unit in the same building as PHC. Phillips offered to purchase PHC for approximately $2.9 million, which Pursuit accepted. Phillips

4

was aware that the Initial Notices were, at the time, still in place against PHC.  In March 2014, Phillips loaned $100,000 to Pursuit secured by a $100,000 mortgage on PHC.[1]

Prior to closing the sale of PHC, Pursuit made an application to Justice Milton Tingling to cancel the Initial Notices.  By Order of December 23, 2014, Justice Tingling cancelled the Initial Notices based on the Appellate Division's December 11, 2014 Opinion holding that the Knopfs had not shown that money damages would be inadequate.

Following the cancellation of the Initial Notices, the Knopfs took several actions aimed at preventing the sale of PHC to Phillips.[2]  First, the Knopfs appealed the cancellation of the

---

[1] According to Phillips, the loan was intended to permit Pursuit to pay its lawyers to seek cancellation of the Initial Notices.

[2] At the same time they sought to enjoin the sale of PHC, the Knopfs also attempted to obtain a final judgment on their breach of contract claim, which would allow attachment of PHC.  Upon remand of the State Court Action to the Supreme Court, the Knopfs moved for entry of a final judgment.  Justice Richard Braun, to whom the case had been reassigned, ordered the parties to participate in a damages hearing, which was held on February 8, 2016 before Judicial Hearing Officer Ira Gammerman. Following the hearing, JHO Gammerman determined that Sanford was liable to the Knopfs in the amount of $10,937,850, and that Pursuit was jointly liable for $8,336,488 of that amount.  On April 4, 2016, the Knopfs moved for confirmation of the JHO's report and entry of final judgment.  That motion remains sub judice.

Initial Notices.  The Appellate Division initially issued a preliminary injunction enjoining the sale of PHC, but on July 2, 2015, vacated the preliminary injunction and affirmed the cancellation of the Initial Notices.  In July 2015, the Knopfs sought reconsideration of the Appellate Division's prior affirmance of the cancellation of the Initial Notices.  On October 6, 2015, the Appellate Division granted the motion for reconsideration, and again affirmed the cancellation of the Notices of Pendency.

On October 22, 2015, the Knopfs made an emergency application to the Appellate Division to restrain the sale of PHC.  The application was heard by Justice John Sweeney Jr., who issued an interim Order permitting the sale of PHC but requiring the proceeds to be placed in escrow pending further order of the Appellate Division (the "Escrow Order").  On November 12, 2015, the Appellate Division denied without opinion another request by the Knopfs to stay the sale of PHC.  On December 29, 2015, the Appellate Divisions denied the Knopfs' request to reargue their stay request, and also denied Pursuit and Sanford's request to vacate the Escrow Order.[3]

--------

[3] The December 29, 2015 Order does not indicate why the Appellate Division did not vacate the Escrow Order in light of its previous denial of the stay request.  The defendants argue that

### III.  Sale of PHC

On February 1, 2016, Phillips purchased PHC for approximately $2.9 million.  None of the proceeds of that sale were initially placed in escrow, and approximately $2.1 million of the sale proceeds were used to pay creditors of Pursuit and Sanford.  On February 26, the Appellate Division ordered the remaining proceeds -- $426,227 -- to be paid into escrow.  On March 3, the New York Supreme Court issued a temporary restraining order enjoining Pursuit or Sanford from assigning, disposing of, encumbering, or secreting any assets.

The Knopfs allege that PHC's sale price of approximately $2.9 million was less than fair market value.  In support of this allegation, the Knopfs allege that PHC was previously listed for sale on June 4, 2014 for $3.4 million.  The Knopfs also allege that the price per square foot paid by Phillips -- approximately $1570 -- was below the average for the building, which was over $2000 per square foot.  Phillips previously purchased another unit in the same building for $4.75 million, and that unit is smaller than PHC and on a lower floor.[4]  The

the Escrow Order had already been mooted by the denial of the stay request because the Escrow Order provided that it was only in force pending "further court order."

[4] The price per square foot was $2451.

Knopfs also rely on the fact that the public listing for PHC stated: "REDUCED BY $1 MILLION FOR QUICK SALE.  MUST BE SOLD BY MONTH'S END."

The Knopfs allege that, at the time Pursuit sold PHC to Phillips, Pursuit was insolvent.  As of December 2014, Pursuit is alleged to have total liabilities of approximately $8.9 million, which included its contractual liability to the Knopfs, unpaid maintenance fees for the Townhouse, unpaid property taxes, legal fees owed to several attorneys, and the mortgage on PHC to Phillips.  The Knopfs allege that Pursuit's assets, at that time, included PHC and the Townhouse.  They allege that PHC had a fair market value of $4 million[5] and that the Townhouse had a fair market value of approximately $5.43 million,[6] for a total

---

[5] It is not clear from the SAC how the Knopfs arrived at the amount of $4 million, but given that they have alleged that another unit in the same building sold for $2587 per square foot, and that PHC measures 1872 square feet, it is plausible that the value of PHC was approximately $4 million at the time of the sale to Phillips.

[6] The Knopfs calculate the value of the Townhouse by starting with the price Pursuit paid for the Townhouse, $3.25 million, and relying on a report by Douglas Elliman titled Decade Survey of Townhouse Sales 2005 – 2014, which allegedly shows that townhouse prices in Lower Manhattan rose by 78.8 percent between January 1, 2005 and December 31, 2014.  The Knopfs contend that because the period between Pursuit's purchase of the Townhouse and the sale of PHC covers no more than 103 of the 120 months analyzed in the Elliman Report, it is reasonable to estimate

of approximately $9.43 million.  When Pursuit sold PHC for
approximately $2.9 million, its assets were reduced to
approximately $8.33 million, rendering Pursuit insolvent.

**IV.   Procedural History**

The Knopfs filed this action on August 22, 2016.  They
filed the SAC on September 26.  Phillips and Sanford each filed
motions to dismiss the SAC on October 27.  The motions became
fully submitted on December 5.

## Discussion

When deciding a motion to dismiss under Rule 12(b), Fed. R.
Civ. P., a court must "accept all allegations in the complaint
as true and draw all inferences in the non-moving party's
favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d
471, 475 (2d Cir. 2009).  In deciding a motion to dismiss, a
court considers "any written instrument attached to the
complaint as an exhibit or any statements or documents
incorporated in it by reference."  Stratte-McClure v. Morgan

---

that the Townhouse appreciated to approximately $5.43 million.
The Court previously held, in a related case brought by the
Knopfs, that these calculations were sufficient for purposes of
pleading the insolvency element of a fraudulent conveyance
claim.  Knopf, 2016 WL 1166368, at *5.

Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted).
The court also considers "documents upon which the complaint
relies and which are integral to the complaint." Subaru
Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d
Cir. 2005).

"To survive a motion to dismiss under Rule 12(b)(6), a
complaint must allege sufficient facts which, taken as true,
state a plausible claim for relief." Keiler v. Harlequin
Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient
factual matter, accepted as true, to state a claim for relief
that is plausible on its face."). "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Parkcentral
Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208
(2d Cir. 2014) (citation omitted).

## V. Tortious Interference with Contract

Under New York Law, "tortious interference with contract
requires the existence of a valid contract between the plaintiff
and a third party, defendant's knowledge of that contract,
defendant's intentional procurement of the third-party's breach

10

of the contract without justification, actual breach of the contract, and damages resulting therefrom." Tuscan/Lehigh Dairies, Inc. v. Beyer Farms, Inc., 26 N.Y.S.3d 115, 121 (2d Dep't 2016) (citation omitted).  In order to satisfy the causation element, "[a] plaintiff must allege that there would not have been a breach but for the activities of defendants." Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir. 1990) (citation omitted).

The Knopfs have failed to adequately plead their claim for tortious interference because they have not alleged facts showing that Pursuit would not have breached the Loan Agreements but for the actions of Phillips.  According to the SAC, Pursuit has been in breach of the Loan Agreements since approximately 2006 when Pursuit failed to grant the Knopfs a mortgage on the Properties or to repay the Knopfs for any portion of the loans. The Knopfs obtained summary judgment in the State Court Action on that very issue before Phillips purchased PHC.  Because Pursuit had already breached the Loan Agreements prior to the sale of PHC, Phillips' actions cannot be the but for cause of that breach.  See Pyramid Brokerage Co. v. Citibank (N.Y. State), N.A., 536 N.Y.S.2d 294, 295 (4th Dep't 1988) (dismissing tortious interference claim because, inter alia, defendant's

conduct did "not constitute interference with this already breached agreement.").

With respect to Pursuit's specific promise not to sell or encumber PHC, the SAC fails to allege facts showing that Pursuit would not have breached that promise but for the actions of Phillips, for two reasons.  First, prior to conveying PHC to Phillips, Pursuit granted a mortgage on PHC to the law firm Meister, Seelig & Fein, LLP, and thus was already in breach of its obligation not to encumber PHC.  Second, prior to Phillips' offer to purchase PHC, Pursuit publicly listed PHC for sale on at least three real estate listing websites.[7]  Pursuit repudiated its obligation not to sell PHC by listing it publicly, and the fact that Phillips happened to be the party who subsequently purchased PHC on the open market does not make Phillip's actions a but for cause of Pursuit's breach.  There is no allegation that Phillips convinced Sanford or Pursuit to sell PHC.

The Knopfs' argument to the contrary is without merit. They contend that they have adequately pleaded this claim because the SAC contains allegations such as "Phillips procured a breach of the agreements between the Knopfs and Pursuit and Sanford, and tortiously interfered with those agreements," and

---

[7] These listings are described in the SAC.

12

"[a]s a result of Phillip's tortious interference, the Knopfs
incurred more than $2.6 million of damages."  To survive a
motion to dismiss, a plaintiff must allege "more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  TechnoMarine SA v. Giftports,
Inc., 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).
Here, there is no plausible allegation that Pursuit or Sanford
would not have sold PHC absent Phillips' involvement.

## VI.   Constructive Fraudulent Conveyance

Under the New York Debtor and Creditor Law ("DCL"),

> a conveyance by a debtor is deemed constructively
> fraudulent if it is made without 'fair consideration,'
> and (inter alia) if one of the following conditions is
> met: (i) the transferor is insolvent or will be
> rendered insolvent by the transfer in question, DCL §
> 273; (ii) the transferor is engaged in or is about to
> engage in a business transaction for which its
> remaining property constitutes unreasonably small
> capital, DCL § 274; or (iii) the transferor believes
> that it will incur debt beyond its ability to pay, DCL
> § 275.

In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005).  The
Knopfs have brought claims under all three of these constructive
fraudulent conveyance provisions, as well as § 273-a, which
covers conveyances by defendants in actions for money damages
who are subject to a final judgment.  As defined by the DCL,
fair consideration is given for property or an obligation:

13

      (a)  When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

      (b)  When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. D.C.L. § 272.  For a conveyance to have been made for fair consideration "(1) the recipient of the debtor's property must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a 'fair equivalent' of the property received; and (3) such exchange must be 'in good faith.'"  Sharp, 403 F.3d at 53 (citation omitted).  "[W]hat constitutes fair consideration under section 272 must be determined upon the facts and circumstances of each particular case." United States v. McCombs, 30 F.3d 310, 326 (2d Cir. 1994) (citation omitted).

    The Knopfs have adequately pleaded their claim for constructive fraudulent conveyance.  They have alleged that, at the time Pursuit sold PHC to Phillips, the fair market value of PHC exceeded the purchase price of approximately $2.9 million.  This allegation is plausible given the allegation that smaller units in the same building sold for a significantly higher price, that the price per square foot was below market, and that

Pursuit, in publicly listing PHS for sale, stated that the price was discounted by $1 million.  The Knopfs have also plausibly alleged that Pursuit was insolvent at the time of the sale and have specifically alleged Pursuit's assets and liabilities.  For the same reason, the Knopfs have plausibly alleged that Pursuit engaged in the sale of PHC and was left with "unreasonably small capital," and that Pursuit sold PHC with the belief that it would "incur debt beyond its ability to pay."[8]

**VII.  Actual Fraudulent Conveyance**

A conveyance is an actual fraudulent conveyance if made "with actual intent . . . to hinder, delay, or defraud either present or future creditors."  N.Y. Debt. & Cred. Law § 276.  "Where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given."  In re Sharp, 403 F.3d at 56 (citation omitted).

Because a claim under § 276 sounds in fraud, it must

---

[8] With respect to § 273-a, a plaintiff must obtain a final judgment in order to prevail under that provision.  See Fischer v. Sadov Realty Corp., 829 N.Y.S.2d 108, 110 (2d Dep't 2006).  Although the Knopfs do not currently have a final judgment in the State Court Action, this claim may proceed and the defendants may renew their motion with respect to § 273-a in the event the Knopfs do not obtain a final judgment in the State Court Action.

satisfy the heightened pleading standards of Rule 9(b), Fed. R.
Civ. P.  Id. at 56.  To satisfy the requirements of Rule 9(b), a
plaintiff must (1) detail the events giving rise to the fraud,
such as the statement/omission that is alleged to be fraudulent,
the identity of the speaker, the location of the fraud, and the
reason the statement is fraudulent, and (2) allege facts "that
give rise to a strong inference of fraudulent intent."  Loreley
Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160,
171 (2d Cir. 2015) (citation omitted).  It is the intent of the
transferor, here Pursuit, which is relevant.  In re Sharp, 403
F.3d at 56 (2d Cir. 2005)  "Due to the difficulty of proving
actual intent to hinder, delay, or defraud creditors, the
pleader is allowed to rely on 'badges of fraud' to support his
case, i.e., circumstances so commonly associated with fraudulent
transfers that their presence gives rise to an inference of
intent."  Id. at 56 (citation omitted).  Badges of fraud
include, inter alia: (1) a close relationship between the
parties, (2) a questionable transfer not in the usual course of
business, (3) inadequacy of consideration, (4) retention of
control of the property by the transferor after the conveyance,
and (5) secrecy, haste, or unusualness of the transaction.  Id.

     The Knopfs have pleaded sufficient badges of fraud to give

rise to a strong inference of Pursuit's fraudulent intent.  The Knopfs have alleged that the sale of PHC was done in haste because the public listing stated: "REDUCED BY $1 MILLION FOR QUICK SALE.  MUST BE SOLD BY MONTH'S END."  They have also alleged that the sale price of PHC was significantly below fair market value.  The SAC also alleges that Pursuit and Sanford have engaged in other fraudulent conveyances.  Finally, it is noteworthy that soon after the sale of PHC, Pursuit used the majority of the proceeds to pay other creditors but paid nothing to the Knopfs.  Given these badges of fraud, the claim for actual fraudulent conveyance may proceed.

**VIII.  Collateral Estoppel and the <u>Rooker-Feldman</u> Doctrine**

Phillips argues that the Court lacks jurisdiction over the Knopf's claims under the <u>Rooker-Feldman</u> doctrine or under the doctrine of collateral estoppel -- i.e., issue preclusion.[9] Neither argument succeeds.

The <u>Rooker-Feldman</u> doctrine "bars the federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

---

[9] Sanford incorporates Phillips' arguments concerning the <u>Rooker-Feldman</u> doctrine and issue preclusion in his motion to dismiss.

inviting district court review and rejection of those
judgments." Sykes v. Mel S. Harris & Associates LLC, 780 F.3d
70, 94 (2d Cir. 2015) (citation omitted).  To satisfy the
requirements of Rooker-Feldman, a defendant must show that the
federal-court plaintiff (1) lost in state court; (2) is
complaining of injuries caused by a state-court judgment; (3) is
inviting district court review and rejection of that judgment;
and (4) filed the federal action after the state-court judgment
was rendered.  Id.  The Second Circuit has interpreted the
fourth requirement to mean that "Rooker-Feldman has no
application to federal-court suits proceeding in parallel with
ongoing state-court litigation." Morrison v. City of N.Y., 591
F.3d 109, 112 (2d Cir. 2010) (citation omitted).

     Rooker-Feldman abstention is inapplicable.  The State Court
Action is proceeding in parallel to this action and thus Rooker-
Feldman does not apply.  Id.  Moreover, the Knopfs are not state
court losers and are not complaining of injuries caused by a
state court judgment.  The Knopfs were granted summary judgment
on their breach of contract claim in the State Court Action, had
their damages determined at a hearing, and are currently moving
for entry of final judgment.  The fact that the state courts
ultimately denied or cancelled certain interim relief -

18

– including notices of pendency, a temporary restraining order, and a preliminary injunction –- does not make the Knopfs state court losers.  Moreover, the Knopfs' claim for a constructive trust is still pending in the State Court Action; there has been no ruling on the merits.

Under New York law, "collateral estoppel, or issue preclusion, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same."  S & R Dev. Estates, LLC v. Feiner, 18 N.Y.S.3d 390, 391 (2d Dep't 2015).  "This doctrine applies only if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the party to be bound had a full and fair opportunity to litigate the issue in the earlier action."  Id. (citation omitted).

The defendants contend that the issue of whether the sale of PHC was lawful was already decided in the State Court Action because the Appellate Division expressly permitted the sale of PHC in its October 22, 2015 Order and because through several rulings, it refused to restrain the sale of PHC.  This argument fails for substantially the same reasons discussed in connection

with the Rooker-Feldman doctrine.  There has been no final

judgment in the State Court Action; the rulings of the State

Supreme Court and the Appellate Division were interim in nature.

Moreover, the claims asserted in this action are distinct from

those in the State Court Action.  For example, whether the

Knopfs were entitled to restrain the sale of PHC has no bearing

on whether that sale was made for fair consideration or whether

Pursuit was insolvent at the time of the sale.  Accordingly,

issue preclusion does not apply.

## IX.  Sanford's Motion to Dismiss

Sanford has moved to dismiss the SAC for failure to state a

claim, collateral estoppel, and the Rooker-Feldman doctrine.[10]

The latter two arguments are addressed above because Sanford

incorporates the arguments raised by Phillips with respect to

those issues.  His arguments under Federal Rule of Civil

_____

[10] In his opening brief, Sanford moves for sanctions under
Federal Rule of Civil Procedure 11 because he contends that the
SAC is "premised upon innumerable knowing misrepresentations of
fact."  In his reply brief, Sanford withdrew his Rule 11 motion
because he states that he had insufficient time to prepare the
motion.  The Court notes that, pursuant to Rule 11, a motion for
sanctions "must be made separately from any other motion and
must describe the specific conduct that allegedly violates Rule
11(b)."  Fed. R. Civ. P. 11(c)(2).  In addition, a motion for
sanctions must "not be filed or be presented to the court,"
unless the party to be sanctioned has been given 21 days to
withdraw or correct the allegedly false contention.  Id.

Procedure 12(b)(6) are addressed below.

**A. Breach of Fiduciary Duty**

To establish breach of fiduciary duty under New York law, a plaintiff must show "the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." Fitzpatrick House III, LLC v. Neighborhood Youth & Family Servs., 868 N.Y.S.2d 212, 213 (2d Dep't 2008). "A cause of action for breach of fiduciary duty is governed by a six-year statute of limitations where the relief sought is equitable in nature, or by a three-year statute of limitations where the only relief sought is money damages." Weiss v. TD Waterhouse, 847 N.Y.S.2d 94, 95 (2d Dep't 2007). The claim accrues at the time of injury. Am. Home Assur. Co. v. Nausch, Hogan & Murray, Inc., 897 N.Y.S.2d 413, 417 (1st Dep't 2010)

The Knopfs have adequately pleaded their claim for breach of fiduciary duty. According to the SAC, a fiduciary duty exists between Sanford and the Knopfs because they invested money in the Hedge Fund, which funds were subsequently used to purchase the Properties. The SAC alleges that Sanford breached his duty by, inter alia, failing to pay property taxes on the Townhouse in 2016, thus reducing its value; filing an action

21

against the Knopfs in bad faith in 2014; and convincing a
reporter to write a negative story about the Knopfs in an effort
to injure their reputation.  Thus, even under the shorter three-
year limitations period, some of the injuries alleged in the SAC
are timely.

Sanford's arguments to the contrary are without merit.  He
asserts in his declaration that (1) neither he nor Pursuit is a
fiduciary of the Knopfs because the loan from the Knopfs was
intended to be a "personal loan," (2) Sanford and Pursuit
acquired the Properties using Sanford's own funds, and (3) the
Knopfs never had any ownership interest in the Properties or
Pursuit.  These factual arguments are not properly raised at the
motion to dismiss stage, because the allegations in the SAC must
be taken as true.

## B. Veil Piercing/Alter Ego

"Under New York law, a court may pierce the corporate veil
where 1) the owner exercised complete domination over the
corporation with respect to the transaction at issue, and 2)
such domination was used to commit a fraud or wrong that injured
the party seeking to pierce the veil."  MAG Portfolio
Consultant, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 63 (2d
Cir. 2001) (citation omitted).  Veil piercing is a fact-specific

inquiry, and courts consider, <u>inter alia</u>:

> (1) disregard of corporate formalities; (2) inadequate
> capitalization; (3) intermingling of funds; (4)
> overlap in ownership, officers, directors, and
> personnel; (5) common office space, address and
> telephone numbers of corporate entities; (6) the
> degree of discretion shown by the allegedly dominated
> corporation; (7) whether the dealings between the
> entities are at arms length; (8) whether the
> corporations are treated as independent profit
> centers; (9) payment or guarantee of the corporation's
> debts by the dominating entity, and (10) intermingling
> of property between the entities.

<u>Id.</u>

The Knopfs have adequately pleaded a claim for veil

piercing/alter ego.  According to the SAC, Sanford exercises

complete control over Pursuit.  The Knopfs allege, and Sanford

admitted at a September 15, 2016 conference, that Sanford is the

sole shareholder of Pursuit.  According to the SAC, Sanford has

abused the corporate form of Pursuit to defraud the Knopfs out

of the money they loaned to the Hedge Fund as described above.

The SAC further alleges that Pursuit has been undercapitalized

as evidenced by its inability to pay property taxes and

maintenance fees for the Properties.  Sanford is also alleged to

have diverted approximately $10,000 from Pursuit to another of

his corporate entities known as Wyndclyffe, LLC.

Sanford argues that the Knopfs should be judicially

estopped from asserting their claim for veil piercing/alter ego

against Sanford because, in the State Court Action, the Knopfs were successful in arguing that a counterclaim for tortious interference brought by Pursuit was severable from that brought by Sanford.  Because the counterclaim by Pursuit was dismissed as inadequately pleaded, the Knopfs were able to move for entry of a final judgment against Pursuit because the only surviving tortious interference counterclaim, which is awaiting trial, was brought by Sanford.  Sanford contends that the Knopfs are now taking a contrary position by claiming that Sanford is the alter ego of Pursuit.

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position."  In re Adelphia Recovery Trust, 634 F.3d 678, 695 (2d Cir. 2011) (citation omitted).  Judicial estoppel applies if the following elements are satisfied: "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel."  Id. (citation omitted).

24

Even assuming the facts described by Sanford are correct,[11] judicial estoppel does not apply.  Whether a party has standing to maintain a particular cause of action, and whether particular causes of action are severable for purposes of litigation, are distinct inquiries from whether the corporate form may be disregarded under a theory of veil piercing.  For that reason, there is no showing that the Knopfs have taken a "clearly inconsistent position" with respect to their allegation that Sanford has abused the corporate form of Pursuit.  There is also no showing that the Knopfs have "derive[d] an unfair advantage," against Sanford.

## C. Constructive Trust

To obtain a constructive trust under New York Law, a plaintiff must demonstrate four elements.  They are "(1) a fiduciary or confidential relationship between the parties, (2) a promise, (3) a transfer of an asset in reliance upon the promise, and (4) unjust enrichment flowing from a breach of the promise."  Cty. of Nassau v. Expedia, Inc., 992 N.Y.S.2d 293, 296 (2d Dep't 2014).

---

[11] Sanford has not identified the relevant briefs and orders in the State Court Action concerning severance of the counterclaims.

25

The Knopfs have adequately alleged a claim for a constructive trust.  As described above, the Knopfs have adequately alleged a fiduciary relationship between them and Sanford.  According to the SAC, Sanford promised to execute a mortgage on the Properties in favor of the Knopfs in exchange for a loan of approximately $4.9 million.  In reliance on that promise, the Knopfs extended a loan to Pursuit, which was used to purchase the Properties.  The Knopfs have alleged that Sanford breached his promise to execute a mortgage on the Properties and was unjustly enriched when he refused to repay the Knopfs and fraudulently conveyed PHC.  These allegations are sufficient to plausibly allege a claim for a constructive trust.

## Conclusion

The Knopfs' claim for tortious interference with contract against Phillips is dismissed.  The October 27 motions to dismiss are otherwise denied.  The claims that remain are: (1) fraudulent conveyance (constructive and actual) against Phillips and Pursuit, (2) veil piercing/alter ego against Sanford, (3) breach of fiduciary duty against Sanford, and (4) constructive trust against Sanford.

Dated:    New York, New York
          December 12, 2016

_____
DENISE COTE
United States District Judge

Copy mailed to:

Michael H. Sanford
23 McKinley Road
Montauk, NY 11954